**COPY**
**Original in File**





SEP 2013
RECEIVED
COUNTY ATTY
OFFICE

*COMMONWEALTH of VIRGINIA*

*Office of the State Inspector General*

Michael F. A. Morehart
State Inspector General

101 N. 14th Street, 7th Floor
Richmond, Virginia 23219

Telephone (804) 625-3255
Fax (804 786-2341

August 29, 2013

Julie A.C. Seyfarth, Assistant County Attorney
County of Chesterfield
P.O. Box 40
9901 Lori Road, Suite 503
Chesterfield, Virginia 23832-0040

Dear Ms. Seyfarth:

This office is in receipt of your request for records made in accordance with the Virginia Freedom of Information Act (§ 2.2-3700 et seq.). The records you requested are enclosed. Thank you for contacting this office.

Sincerely,

Michael F. A. Morehart
State Inspector General

Enclosures: 7

# THE RUTHERFORD INSTITUTE

Post Office Box 7482
Charlottesville. Virginia 22906-7482

JOHN W. WHITEHEAD
Founder and President

TELEPHONE 434 / 978 - 3888
FACSIMILE 434/ 978 – 1789
www.rutherford.org

September 28, 2012

G. Douglas Bevelacqua, Inspector General
For Behavioral Health and Developmental Services
Office of the Inspector General
1220 Bank Street
Richmond, VA 23219-1797



RECEIVED
OCT 1 2012
OFFICE OF THE STATE INSPECTOR GENERAL
COMMONWEALTH OF VIRGINIA

**Via U.S. Mail and Electronic Mail**

Dear Mr. Bevelacqua:

I am writing to request your investigation pursuant to Virginia Code §2.2-309(A) and (B) of the officers and agencies involved in the recent involuntary civil commitment of decorated marine Brandon Raub in Chesterfield County. It appears that specific decisions and actions of Virginia officials and agencies which led to Raub's involuntary commitment represented, at best, a misuse of the Commonwealth's involuntary commitment statutes and, at worst, an abuse of those statutes to punish a citizen for speech that government officials found distasteful. The Rutherford Institute is also concerned that the entanglement of the Community Services Board ("CSB") in this sensitive process may represent a due process problem in need of systemic correction.

Brandon Raub is a United States Marine Corps veteran who was honorably discharged from service after tours of duty in Iraq and Afghanistan. He now resides in Chesterfield County, Virginia, where he manages two successful businesses. Like many Americans, Raub uses his Facebook page to air his political opinions, post song lyrics, and engage in virtual online games with friends.

On Thursday, August 16, 2012, police and FBI agents, among others, arrived at Raub's home and asked to speak with him about his Facebook posts. Raub cooperated fully with law enforcement and discussed his political views with them at length. While the officers apparently concluded that none of Raub's expressions rose to the level of being punishable by law, Chesterfield police officers reportedly issued a "paperless" Emergency Custody Order pursuant to Va. Code § 37.2-808(G) at 7:40 p.m. Officers then handcuffed Raub and transported him to police headquarters without informing him

G. Douglas Bevelacqua
September 28, 2012
Page 2

of his rights. While records indicate that a Temporary Detention Order was drafted earlier that day, at approximately 3:30 p.m., a magistrate did not sign and issue the Order until 12:11 a.m. on August 17; more than four hours after Raub had been taken into custody. It is therefore apparent that Raub was detained pursuant to the ECO beyond the statutorily permitted time period, and without any record of police having requested or been granted an extension by the magistrate pursuant to Va. Code § 37.2-808(G).

Pursuant to express statutory direction, the magistrate's decision to issue the TDO was based, in part, upon the evaluation of a psychologist employed by the Community Services Board—a government agency.[1] In this evaluation, the psychologist's "Significant Clinical Findings" were limited to: (1) that Raub took long pauses before answering questions, and (2) that he was uncomfortable with the Secret Service. On this paltry clinical basis, the psychologist concluded that a TDO was appropriate.

Following Raub's transfer to John Randolph Medical Center, where he continued to be detained against his will pursuant to the TDO, the Chesterfield Police Department initially refused to inform Raub's mother, Cathleen Thomas, of the location where her son had been taken. Thomas was also denied other basic information—including the time of the hearing and the name of the doctor assigned to treat Raub—which she needed in order to act as an effective advocate for her son's interests. Despite the fact that Raub clearly had a right to obtain an independent evaluation and present his own expert witnesses, Thomas was informed that she would not be permitted to assist Raub in obtaining an independent evaluation for Raub from their own family's health care professionals.

Meanwhile, the physician assigned to treat Raub during his stay at John Randolph Medical Center repeatedly denied Raub's own requests to be evaluated and treated by a mental health professional of his own choosing. Allegedly, this doctor further informed Raub that he would force Raub to take medications against Raub's will if the doctor saw fit.

The involuntary commitment hearing was finally held on August 20 inside the confines of the Medical Center's psychiatric ward. The foregoing events and misinformation, however, precluded Raub from exercising his due process rights to present a meaningful defense to the commitment petition. The Special Justice repeatedly indicated that he was unable to hear the oral evidence given during the hearing, and while he recorded the proceeding on an old-fashioned dictaphone, Raub has been unable to obtain a copy of the recording to date—another denial of his statutory rights.[2] Ultimately, the Special Justice ignored Raub's explanations of the context of the allegedly "terroristic" Facebook posts—many of which were actually the lyrics of popular songs. The Special Justice then ordered Raub to be committed to the psychiatric

---

[1] Va. Code § 37.2-816.
[2] Va. Code § 37.2-818.

G. Douglas Bevelacqua
September 28, 2012
Page 3

ward of the Veterans Administration Hospital in Salem, Virginia—some three (3) hours
away from his family and attorneys—against his will and that of his family.

One week after Raub was forcefully taken from his home as a result of engaging
in free speech that is fully protected by the First Amendment to the United States
Constitution, attorneys for The Rutherford Institute were able to secure his release upon
their first appearance before a Circuit Court judge. This judge, who was scheduled to
hear only a procedural matter related to the appeal of the commitment order, immediately
found that the petition for Raub's involuntary commitment was "so devoid of any factual
allegations that it could not be reasonably expected to give rise to a case or controversy,"
and ordered Raub's release.

While we are pleased to have secured Raub's release from this unlawful and
unjust detainment, we have grave concerns that his case represents what may already be
or could easily become a disturbing trend: the misuse of civil commitment statutes by
government officials to punish free speech and the denial of basic due process rights.
Indeed, since The Rutherford Institute began assisting Brandon Raub, we have been
inundated with phone calls and e-mails from veterans who report that they have been
subjected to similar atrocities. State civil commitment processes appear to be a ripe
venue for ensuring that persons with what are considered unsavory political views by
certain government officials are quarantined. By invoking these statutes, officials can
sidestep the regular judiciary process and the rigorous procedural and jurisprudential
protections that would apply if they were to bring actual charges against the accused that
implicate First Amendment interests. By contrast, the civil commitment process is
stunningly common and pervasive: more than 20,000 civil commitments were made in
Virginia last year.

This is why we are seeking your intervention. In particular, we request that you
initiate an immediate investigation of the following issues with regard to the involuntary
civil commitment process:

## 1. Failure of Agencies/Officers to take First Amendment rights into account.

This case clearly implicates the core First Amendment rights of citizens to be
critical of their government. While communications that constitute "true threats" toward
others are not considered protected speech, the records in this case contain no information
whatsoever suggesting that Raub's Facebook posts were "true threats." Indeed, if law
enforcement had considered them such, they could have properly brought criminal
charges against Raub rather than invoking the involuntary civil commitment statutes. But
the concern we wish to flag for your particular attention is that neither law enforcement
nor CSB personnel appeared to even consider this inquiry relevant. To the extent that
government officers and agents do not consider this critical question, they are facilitating
the detention of citizens in violation of the First Amendment, a practice which represents

G. Douglas Bevelacqua
September 28, 2012
Page 4

an abuse of the Commonwealth's involuntary commitment statutes and must be ended immediately.

### 2. Failure of Officers to abide by statutorily-prescribed time limit for detention pursuant to Emergency Custody Order.

Again, the record reveals that officers detained Raub beyond the statutory limit of four (4) hours.[3] This is a concrete abuse of the involuntary commitment statutes that demands your intervention.

### 3. *De Facto* Denial of meaningful Due Process protections.

In light of the gravity of the deprivations of liberty contemplated by the involuntary commitment proceedings, it is essential that those subject to these proceedings be provided with actual, meaningful protections of their rights to the due process of law—including the ability to put on a substantive defense. At the most basic level, this requires the subject's being informed of his right to and actually *allowed* to obtain his own expert evaluations. It also requires that when the subject so wishes, his family members and witnesses be informed of the details of the hearing in sufficient time to allow their participation.

### 4. Failure to provide copy of recording as required by statute.

While the Clerk's office of the Hopewell Circuit Court admits having custody of the tape containing the recording of the hearing, it has informed Raub's legal counsel that it has no way of making a copy of the tape and that the tape must therefore remain under seal. This, of course, has precluded Raub's legal counsel from obtaining evidence that is critical to Raub's pursuit of judicial remedies for the gross violations of his civil liberties. This may, indeed, be simply a technical problem. However, it is one that demands immediate systemic correction in order to protect the due process rights of citizens and to fulfill the statutory requirements of Va. Code. § 37.2-808(G).

### 5. Lack of Impartiality of Mental Health Evaluators.

Finally, we are concerned about the considerable involvement of the CSB—a government agency—in the involuntary commitment process. As you know, Virginia law *requires* that the prescreening report be performed by a CSB agent.[4] But the law further allows the "independent" evaluation to also be performed by a CSB agent.[5] Where this happens, the current system enables the magistrate or a special justice to order a citizen's involuntary civil commitment (which may be premised entirely on the citizen's speech under certain circumstances) to be based entirely upon the evidence of

---

[3] Va. Code § 37.2-808(G).

[4] Va. Code § 37.2-816.

[5] Va. Code § 37.2-815.

G. Douglas Bevelacqua
September 28, 2012
Page 5

government officials and agents. This is a systemic violation of detainees' due process
rights under the Fourteenth Amendment.

We ask that you take immediate steps to ensure that these significant flaws are
corrected, and that Virginia's involuntary civil commitment process does not continue to
serve as a pathway for government officials and agencies—whether purposefully or
inadvertently—to tread upon Virginians' most cherished civil liberties. Thank you for
your prompt attention to this critically important matter.

Sincerely yours,

John W. Whitehead
President
THE RUTHERFORD INSTITUTE

cc:    Attorney General Ken Cuccinelli
       Governor Bob McDonnell
       Brandon Raub



# *COMMONWEALTH of VIRGINIA*

*Office of the State Inspector General*

Michael F. A. Morehart
State Inspector General

1111 East Broad Street
Richmond, Virginia 23219

Telephone (804) 786-6317

October 4, 2012

John W. Whitehead, President
The Rutherford Institute
P. O. Box 7482
Charlottesville, Virginia 22906-7482

Re: *The involuntary civil commitment of Brandon Raub cited in The Rutherford Institute's letter dated September 28, 2012*

Dear Mr. Whitehead,

The Office of the State Inspector General (OSIG) acknowledges receipt of the above-cited letter and offers the following response to the specific issues presented in the letter.

First, the OSIG lacks the jurisdiction to investigate most of the allegations presented pursuant to "§ 2.2-309 (A) and (B)" *Code of Virginia* as you have requested. The Office's investigative mandate as contained in *Code* § 2.2-309(A)(4) is limited to the investigation of:

> ...the management operations of state agencies and nonstate agencies
> to determine whether acts of fraud, waste, abuse or corruption have
> been committed by state officers or employees of any state agencies or
> nonstate agencies, including any allegations of criminal acts affecting
> the operations of state agencies or nonstate agencies.

Second, while this Office lacks the authority to investigate the allegations of the abrogation of First Amendment rights, denial of due process, and the lack of impartiality of mental health evaluators under § 2.2-309 (A) and (B), the OSIG does have jurisdiction to investigate "specific complaints of abuse, neglect, or inadequate care" at state-operated facilities and behavioral health providers under *Code* § 2.2-316(1).

Pursuant to the authority of *Code* § 2.2-316(1), the OSIG has reviewed Mr. Raub's *Petition for Involuntary Admission for Treatment* and supporting prescreening documentation and determined that the record appears to reflect compliance with criteria forth in the *Code* at § 37.2-805 *et seq.*

*Integrity and Accountability in State Government*

Mr. John W. Whitehead
Re: *Involuntary Commitment of Bandon Raub*

Page 2
October 4, 2012

Based upon the *Petition for Involuntary Admission for Treatment*, it does not appear that this man was abused, neglected, or received inadequate care. The record of Mr. Raub's condition at the time of his prescreening suggests that those responsible for his evaluation could have been guilty of "neglect," as defined by *Code* § 37.2-100, if they had failed to provide the services needed for his health, safety and welfare.

Finally, the statute permits prescreening clinicians to request an additional two-hour extension – for a total of six hours to execute a temporary detention order, when needed. The OSIG has been advised that this extension was requested by the community services board and approved by the magistrate in Mr. Raub's case.

Sincerely,

Michael F. A. Morehart
State Inspector General

C:     Attorney General Ken Cuccinelli
       Governor Robert McDonnell
       Commissioner James Stewart
       Secretary William Hazel, MD.

*Integrity and Accountability in State Government*