IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| BRANDON RAUB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:13CV328–HEH |
| | ) | |
| MICHAEL CAMPBELL, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>
(Motion to File Second Amended Complaint)

This matter is before the Court on Plaintiff Brandon Raub's ("Raub") Motion for Leave to File a Second Amended Complaint (ECF No. 101), filed on December 9, 2013. The parties have filed memoranda addressing the issue, and the matter is ripe for disposition. For the foregoing reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

This case involves the alleged unlawful seizure and detention of Raub "upon the pretext that he was mentally unstable," which Raub contends was "the result of animus against him because of his speech critical of the government." (Pl.'s Mot. for Leave to File Second Amend. Compl., Ex. A ¶ 1, ECF No. 101-3) ("Proposed Second Amend. Compl.") Pursuant to the parties' Consent Dismissal as to defendants Lee Bowen ("Bowen"), Russell Morgan Granderson ("Granderson"), Michael Paris ("Paris"), Terry Granger ("Granger"), the officers involved in taking Raub into custody, and the United States of America (collectively "former defendants"), this Court dismissed these

defendants with prejudice on November 27, 2013. (ECF No. 99.) Michael Campbell ("Campbell"), a certified prescreener and senior clinician employed by the Chesterfield Community Services Board ("CSB"), is the only defendant remaining. (Proposed Second Amend. Compl. ¶ 8.) Raub seeks leave to file a second amended complaint, which removes the "*Bivens*" claim, adds a claim of negligence, and reinstates the previously dismissed false imprisonment claim.

In the present motion, Raub seeks to dismiss the "*Bivens*" claim, which originally alleged in pertinent part that Campbell and the former defendants "deprived Raub of his constitutional rights to be free from unreasonable seizure and not to be deprived of his liberty without due process of law, as guaranteed by the Fourth and/or Fifth Amendments." (First Amend. Compl. ¶ 54, ECF No. 64.)

Second, Raub seeks to reinstate the previously dismissed false imprisonment claim against Campbell.[1] In his first amended complaint, Raub alleged in support of the false imprisonment claim that the former defendants arrested and detained him by force. (*Id.* at ¶ 62.) In his proposed second amended complaint, Raub now contends as part of his false imprisonment claim that "Campbell *directed* the detention of Raub, thereby imposing restraints upon Raub's liberty, without legal justification." (Proposed Second Amend. Compl. ¶ 52) (emphasis added).

Third, Raub requests leave to add a claim for negligence, specifically that,

> Campbell had a duty to comply with Va. Code § 37.2-808(A) when he swore out a Petition for Involuntary Admission for Treatment as

---

[1] This Court dismissed without prejudice the false imprisonment claim against Campbell in its Memorandum Opinion issued on August 2, 2013. (ECF No. 39.)

'responsible person' stating 'he has probable cause to believe that [Raub] (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

(*Id.* at 57.) Raub further asserts that Campbell breached that duty when he swore out a Petition for Involuntary Admission for Treatment ("Campbell's Petition") based on:

a. Raub's political views that Campbell categorized as psychological symptoms;
b. Hearsay of statements that were not specific threats of harm;
c. Treating alleged preoccupied and distracted conduct by Raub as evidence of psychosis;
d. Raub speaking seriously in conversations with law enforcement; and
e. Treating Raub's silence in the face of questioning by law enforcement as a sign of mental illness.

(*Id.* at 58.) Plaintiff contends "Campbell's breach of his duty to act as a 'responsible person' proximately caused Raub to be involuntary (sic) detained and suffer damages." (*Id.* at 59.)

## II. STANDARD OF REVIEW

Rule 15 of the Federal Rules of Civil Procedure provides that parties should "freely" be given leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Fourth Circuit has explained, "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)).

3

Amendment is futile when a proposed amended complaint fails to state a claim. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Whether a complaint fails to state a claim, and, thus, amendment would be futile is analyzed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* In considering a Rule 12(b)(6) motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Since there is no objection to Plaintiff's motion to dismiss Count II, the "*Bivens*" claim will be removed from the complaint, and Raub will be directed to amend the first amended complaint accordingly. Fed. R. Civ. P. 15(a)(2). For obvious reasons, the removal of this claim would not prejudice Campbell, there is no indication that this amendment has been made in bad faith, and futility is irrelevant to the removal of a claim. *Nourison Rug Corp.*, 535 F.3d at 298.

For the reasons that follow the Court is of the opinion that the other proposed amendments fail to state an actionable claim, and would therefore be futile. Because the Court holds that the addition of these claims would be futile, it does not need to consider

4

whether those amendments would be prejudicial to Campbell or whether there has been bad faith on Raub's part.

A. **False Imprisonment Claim**

The Court finds that even with his revised theory of liability, Raub's attempt to revive his false imprisonment claim is futile because it still fails to assert a plausible claim under the facts alleged in his proposed second amended complaint.[2]

False imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 255 Va. 492, 497 (1998) (quoting *W.T. Grant Co. v. Owens*, 149 Va. 906, 921 (1928)). The Supreme Court of Virginia has explained that "false imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion." *Id.*

Given the removal of the former defendants, Raub has recast his claim to now allege that "Campbell *directed* the detention of Raub, thereby imposing restraints upon Raub's liberty, without legal justification." (Proposed Second Amend. Compl. ¶ 52) (emphasis added). However, Raub's recrafted theory in the context of the complaint, is merely a conclusion without factual support.

Raub contends in relevant part that "[i]n the seizure, transportation and detention of Raub, Bowen and Granderson acted at the request/and or instigation of Campbell," and that Campbell "aided and/or abetted" Bowen and Granderson in the seizure,

---

[2] Raub does not discuss the addition of the false imprisonment claim in his Memorandum in Support of His Motion for Leave to File a Second Amended Complaint. (ECF No. 101-1.)

5

transportation and detention of Raub. (*Id.* at ¶¶ 19-20.) It is plain from the proposed second amended complaint, though, that Paris and Granger, who were accompanied by other Chesterfield law enforcement officers and federal agents, sought entrance in Raub's home to discuss Raub's statements with him. (*Id.* at ¶ 10.) Raub agreed to leave his home and speak with Paris and Granger outside of his home. (*Id.* at ¶ 11.) Following this discussion, Paris spoke on the telephone with Campbell, however the specific content of the conversation is not disclosed in the complaint.[3] (*Id.* at ¶¶ 13-14.) Chesterfield County Police Officers Bowen and Granderson then handcuffed Raub, and Officers Bowen and/or Granderson transported Raub to detain him. (*Id.* at ¶¶ 16-17.) Thus, the officers "direct[ly] restrain[ed]" Raub – not Campbell. *Jordan*, 255 Va. at 497 (quoting *W.T. Grant Co.*, 149 Va. at 921).

It was not until *after* the officers detained and transported Raub that Campbell conducted his evaluation of Raub and eventually filed his Petition. (Proposed Second Amend. Compl. ¶¶ 15-17, 22.) Whether Campbell, a certified prescreener and senior clinician for CSB, ordered the police officers over the telephone to detain Raub, and the officers followed such unorthodox orders is pure speculation and at best merely conceivable. Even when the proposed second amended complaint is viewed in the light most favorable to Raub, *T.G. Slater & Son*, 385 F.3d at 841, these allegations do not "raise a right of relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

---

[3] Instead, the complaint merely states that "Paris spoke by phone with Campbell," and concludes "Campbell directed Paris and/or others with him to take Raub into custody, purportedly under Virginia laws involving mental health evaluations." (*Id.* at ¶ 14.) Without at least some content of the conversation that is central to Raub's false imprisonment claim, the Court must find that Raub's contention that Campbell "directed" the officers to detain him is a mere conclusion. *Ashcroft*, 556 U.S. at 678.

Moreover, an initial detention pursuant to an Emergency Custody Order ("ECO") – like the one executed here (as discussed further *infra*) – can only be conducted under the order of a magistrate judge or the authority of a law enforcement officer. Va. Code §§ 37.2-808(A)[4], 37.2-808(G).[5] Thus, while Campbell may have had authority to provide advice and counsel to the officers, the decision to detain Raub resided with the officers as a matter of law.[6]

There is simply no factual or legal basis alleged that supports Raub's false imprisonment claim against Campbell. Therefore, the Court finds that the proposed

---

[4] Va. Code § 37.2-808(A) states in pertinent part,

> Any magistrate shall issue, upon the sworn petition of any responsible person, treating physician, or upon his own motion, an emergency custody order when he has probable cause to believe that any person (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

[5] "A law-enforcement officer, who based upon his observation or the reliable reports of others, has probable cause to believe that a person meets the criteria for emergency custody as stated in this section may take that person into custody and transport that person to an appropriate location to assess the need for hospitalization or treatment without prior authorization." Va. Code § 37.2-808(G).

[6] Further, Raub does not allege a theory of false imprisonment based on the premise that there was a proper initial detention that became improper when it was inappropriately prolonged. *See Sands & Co. v. Norvell*, 126 Va. 384, 400-401 (1919) ("False imprisonment may result not only from the arrest of a person without any valid warrant, but also from the unlawful detention of a prisoner who has been lawfully arrested. Unreasonable delay in presenting a prisoner for examination or trial and a fortiori mistreatment after arrest followed by a release without any hearing before the magistrate, are instances in point.") Thus, the Court does not address such a theory.

7

second amended complaint fails to state a plausible claim of false imprisonment, and consequently the amendment would be futile.

### B. Negligence Claim

Raub argues the proposed second amended complaint "would not be futile because it inserts a new viable cause of action, negligence, against the Defendant." (Pl.'s Mot. for Leave to File Second Amend. Compl., Ex. 1 at 5, ECF No. 101-1.) This Court finds that the negligence claim envisioned by Raub lacks legal and factual moorings. Furthermore, the facts pled could not as a matter of law constitute gross negligence as suggested in his supporting memorandum.

First, Raub's negligence claim both legally and factually falls short of the mark on three fronts. Virginia provides for an ECO under Va. Code § 37.2-808, quoted *supra*, as well as a Temporary Detention Order ("TDO") under Va. Code § 37.2-809. As explained below, the distinction is significant.

Va. Code § 37.2-808(B) indicates how the ECO and TDO can work together and reveals that an ECO is issued to enable a prompt initial evaluation, which is used to determine whether a TDO is necessary to extend the detention under Va. Code § 37.2-809 to allow for further evaluation. Va. Code § 37.2-808(B) states:

> Any person for whom an emergency custody order is issued shall be taken into custody and transported to a convenient location to be evaluated to determine whether the person meets the criteria for temporary detention pursuant to § 37.2-809 and to assess the need for hospitalization or treatment. The evaluation shall be made by a person designated by the community services board who is skilled in the diagnosis and treatment of mental illness and who has completed a certification program approved by the Department.

8

Va. Code § 37.2-808(B).

As indicated *supra*, Raub could only have been initially detained pursuant to the order of a magistrate judge, Va. Code § 37.2-808(A), or by the authority of a law enforcement officer, Va. Code § 37.2-808(G). This initial detention prompted the evaluation by Campbell.[7] (Proposed Second Amend. Compl. ¶ 22.) Based on Campbell's evaluation, he then filed his Petition recommending that a TDO be issued. (*Id.* at ¶ 23.) The magistrate judge ultimately entered the TDO, at least in part on the basis of Campbell's Petition. (*Id.* at ¶ 28.)

Raub alleges that Campbell failed "to comply with Va. Code § 37.2-808(A) when he swore out a Petition for Involuntary Admission for Treatment as (sic) 'responsible person.'" (*Id.* at ¶ 57.) However, under a reasonable reading of the proposed second amended complaint Campbell did not file a Petition as a "responsible person"[8] under Va. Code § 37.2-808(A) to request an ECO. Instead, he performed an evaluation after an ECO had been deemed necessary by the officers, and filed a Petition for a TDO as a "responsible person" under Va. Code § 37.2-809. (*Id.* at ¶¶ 22-23, 28.) Raub blurs the lines between these distinct statutes and the crucial roles each player has in carrying out an ECO and TDO.

---

[7] It is clear that a detention under Va. Code § 37.2-808 is intended to be brief. *See Robertson v. Prince William Hosp.*, 2012 U.S. Dist. LEXIS 58752 (E.D. Va. Apr. 25, 2012) (quoting Va. Code § 37.2-808(J)) ("The person is subject to an ECO until a temporary detention order is issued, the hospital releases the person, or until the emergency custody order expires, which may 'not to exceed four hours from the time of execution.'").

[8] "Whenever the term responsible person appears, it shall include a family member as that term is defined in § 37.2-100, a community services board or behavioral health authority, any treating physician of the person, or a law-enforcement officer." Va. Code § 37.2-800.

Moreover, Raub incorrectly alleges that "Campbell's breach of his duty to act as a 'responsible person' [when he filed his Petition for a TDO] proximately caused Raub to be involuntary (sic) detained and suffer damages." (*Id.* at ¶ 59.) By the time Campbell evaluated Raub and filed his Petition, Raub had already been seized by the officers under the functional equivalent of an ECO. (*Id.* at ¶¶ 16, 22-23.) Therefore, Campbell's filing of his Petition could not have been the proximate cause of Raub's initial detention.

In addition, the magistrate judge – not Campbell – makes the final decision of whether there is probable cause sufficient to justify a TDO under Va. Code § 37.2-809. *See* Va. Code §§ 37.2-809(B) (quoted *infra*), 37.2-809(C) ("When considering whether there is probable cause to issue a temporary detention order, *the magistrate may, in addition to the petition, consider*" any of the enumerated sources of information.) (emphasis added). Thus, even hewing closely to the text of the complaint, the extension of his detention (after the officers initially detained Raub) was proximately caused by the magistrate judge's order, not Campbell's. Consequently, the factual allegations central to the negligence claim fail to square with the sweeping legal conclusions in his complaint. Raub's negligence claim therefore fails to meet the test of "plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

Second, aside from the errors of statutory construction in Raub's proposed second amended complaint, the negligence allegations fail to state an actionable claim as a matter of law. In his Memorandum in Support of His Motion for Leave to File a Second Amended Complaint, Raub relies on *Harris v. Kreutzer*, 271 Va. 188 (2006) to support

10

his argument that there is a plausible negligence claim.[9] The Court noted in that case, as Raub emphasizes, that in certain circumstances, a cause of action for malpractice may lie for the negligent performance of a *doctor's* mental and physical examination of a party whose mental or physical condition is in controversy. *Id.* at 198. However, the Court expressly summarized its holding as follows:

> In summary, we hold that a cause of action for malpractice may lie for the negligent performance of a Rule 4:10 examination. However, a Rule 4:10[10] physician's *duty is limited solely to the exercise of due care consistent with the applicable standard of care so as not to cause harm* to the patient in actual conduct of the examination.

*Id.* at 202 (emphasis added). The Supreme Court of Virginia found that there was a consensual physician-patient relationship in those circumstances because "[b]y bringing her personal injury action, Harris gave her implied consent to the Rule 4:10 examination and formed a limited relationship with Dr. Kreutzer for purposes of the examination." *Id.* at 199.

The circumstances of *Harris* do not exist here, and, thus, Raub fails to cite any authority allowing for a claim of negligence in the circumstances at hand. Unlike in *Harris*, Raub did not bring an action that put his mental health at issue and the evaluation was certainly not consensual, implied or otherwise, therefore no physician-patient

---

[9] Raub also cites *Molchon v. Tyler*, 262 Va. 175, 182 (2001), *Rogers v. Marrow by Marrow*, 243 Va. 162, 167 (1992), and *Bryan v. Burt*, 254 Va. 28, 34 (1997). All of these cases are factually distinguishable as they do not involve court-ordered evaluations, like the one at issue here. Thus, these opinions do not drive our analysis of Raub's negligence claim.

[10] Rule 4:10 of the Rules of the Supreme Court of Virginia states "[w]hen the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending, upon motion of an adverse party, may order the party to submit to a physical or mental examination." *Harris*, 271 Va. at 193, n.2 (citing Rule 4:10(a) of the Rules of the Supreme Court of Virginia).

11

relationship existed. Instead, Campbell evaluated Raub as a result of the officers' decision to detain Raub for an emergency mental health evaluation. (Proposed Second Amend. Compl. ¶¶ 14, 17, 22.) Moreover, there is no allegation that Campbell is a licensed physician[11], and, thus, no physician-patient relationship like that in *Harris* could exist on the facts alleged.

Even if Campbell were a doctor and was conducting a Rule 4:10 examination like in *Harris*, there is nothing in the complaint to indicate that Campbell has not complied with the standard of care that theoretically could be required of him.

> Unlike a physician in a traditional physician/patient relationship, a Rule 4:10 examiner has no duty to diagnose or treat the patient, and *no liability may arise from his report or testimony regarding the examination*. Because the Rule 4:10 examination functions only to ascertain information relative to the underlying litigation, *the physician's duty in a Rule 4:10 setting is solely to examine the patient without harming her* in the conduct of the examination.

*Harris*, 271 Va. at 201 (emphasis added). Thus, even if teachings of *Harris* applied here, Campbell could not be held liable for his report (or by logical extension, his Petition) resulting from his examination, and as discussed *infra*, Campbell conducted his evaluation "without harming" Raub. *Id.* Without more, the Court finds Raub has failed to state a claim for negligence that is "plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570

Third, Campbell's actions cannot as a matter of law constitute gross negligence. While Raub does not specifically allege gross negligence in his proposed second

---

[11] In fact, Raub alleges that Campbell "is not a licensed psychotherapist in the Commonwealth of Virginia." (Proposed Second Amend. Compl. ¶ 8.)

amended complaint, he suggests in his Memorandum in Support of His Motion for Leave to File a Second Amended Complaint that the facts may warrant such a claim. (ECF No. 101-1.) Although gross negligence is not before the Court, it will be addressed briefly out of an abundance of caution and to further demonstrate that Raub has failed to state an actionable claim.

"[T]he standard for gross negligence is one of indifference, not inadequacy." *Kuykendall v. Young Life*, 261 Fed. App'x 480, 490-91 (4th Cir. 2008). "The Virginia Supreme Court has indicated that for the 'cumulative effect of the[] circumstances' to constitute gross negligence, it must amount to 'a total disregard of all precautions, an absence of diligence, or lack of even slight care.'" *Id.* at 490 (quoting *Chapman v. City of Virginia Beach*, 252 Va. 186, 191 (1996)). *See also Roach v. Botetour County School Board*, 757 F. Supp. 2d 591, 597 (W.D. Va. 2010) (granting Rule 12(b)(6) motion to dismiss claim of gross negligence under Virginia law because defendant "exercised at least some modicum of diligence and care," stating "[t]his distinguishes her conduct from gross negligence where even slight diligence or scant care are absent").

Although Plaintiff disagrees with his conclusions, there are no factual allegations that plausibly suggest that Campbell failed to adhere to the evaluation criteria contemplated by the Virginia Code.[12] According to the proposed second amended

---

[12] Va. Code § 37.2-809(B) states in relevant part:

> A magistrate shall issue, upon the sworn petition of any responsible person, treating physician, or upon his own motion and only after an evaluation conducted in-person or by means of a two-way electronic video and audio communication system as authorized in § 37.2-804.1 by an employee or a designee of the local community services board to determine whether the person meets the criteria for

13

complaint, Campbell evaluated Raub in person at the Chesterfield County Jail. (Proposed Second Amend. Compl. ¶ 22.) *Before* Campbell prepared and filed his Petition, he discussed Raub's case with at least one law enforcement officer (Paris) who had talked face-to-face with Raub about Raub's comments. (*Id.* at ¶¶ 10-11, 13-14.)[13] Campbell also recorded his observations and opinions based on his evaluation in a report accompanying his Petition and provided to the magistrate judge. (*Id.* at ¶ 25.)

After conducting his evaluation, making observations, and having these discussions, Campbell filed the Petition in which he indicated that in his view there was evidence of psychosis, and that Raub was in need of hospitalization or treatment. (*Id.* at ¶¶ 24, 58.) Campbell opined "that there existed a substantial likelihood that, as a result of mental illness, Raub would, in the near future, cause serious physical harm to others as evidenced by recent behavior causing, attempting, or threatening harm," and "that Raub would suffer serious harm due to his lack of capacity to protect himself from harm or

---

temporary detention, a temporary detention order if it appears from all evidence readily available, including any recommendation from a physician or clinical psychologist treating the person, that the person (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

[13] Raub complains that Campbell based his Petition in part on "hearsay statements." (Proposed Second Amend. Compl. ¶ 58.) However, Va. Code § 37.2-809(C) expressly permits magistrate judges to consider "any relevant hearsay evidence" when determining "whether there is probable cause to issue a temporary detention order." It is only logical that if the magistrate judge, who makes the ultimate probable cause determination, can consider hearsay evidence, than the "responsible person" filing the Petition can properly consider it as well.

14

provide for his own basic human needs." (*Id.* at ¶ 24.) Whether another mental health evaluation would have resulted in a different conclusion is irrelevant. It is clear that his evaluation was not conducted with indifference. *Kuykendall*, 261 Fed. App'x at 490. Therefore, the complaint – even with the proposed amendment – cannot as a matter of law support a claim of gross negligence.

In sum, Raub has failed to state a claim for negligence because the allegations in his complaint are legally incorrect in essential respects; the claim fails to state a plausible cause of action; and even if Raub had asserted gross negligence, the facts alleged fall far short of supporting such a claim.

## IV. CONCLUSION

The Court finds that the removal of the "*Bivens*" claim is warranted under Fed. R. Civ. P. 15(a)(2), and that the addition of the false imprisonment and negligence claims would be futile. *Nourison Rug Corp.*, 535 F.3d at 298; *U.S. ex rel. Wilson*, 525 F.3d at 376. Accordingly, the Court grants Raub's Motion for Leave to File a Second Amended Complaint (ECF No. 101) only to dismiss the "*Bivens*" claim (Count II) from the First Amended Complaint (ECF No. 64). The Court denies the Motion in all other respects. Thus, the First Amended Complaint will be amended by the removal of the "*Bivens*" claim.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Jan. 14, 2014
Richmond, Virginia